I will turn to the next case on our calendar, United States v. Ryan Lander Good morning Your Honor, I'm Stephanie Garland, I'm counsel for Ryan Lander, the appellant. There are a number of issues as the court is aware that I briefed in this case, but I think one theme runs through pretty much all of the issues, and that is that Mr. Lander moved to withdraw his plea, and after that he was repeatedly punished for having done so. The first issue arises in terms of the district court's refusal to even consider providing substitute counsel for Mr. Lander. In a letter on March 15, 2016, Mr. Lander asked the district court to assign new counsel. Mr. Lander made specific allegations about the conduct of his trial counsel, including the fact that trial counsel had told Mr. Lander's father and then Mr. Lander that if somebody did to counsel's child what Mr. Lander was accused of having done, counsel would shoot that person. That displayed a level, or at least a possible level of personal bias that the district court was under a duty to inquire about, and instead of doing that, at the hearing that was held immediately following receipt of Mr. Lander's letter, the court directed that Mr. Lander proceed pro se. This is not a situation when a client had been attorney shopping. Mr. Lander had had one prior counsel who he didn't seek to replace. Prior counsel was replaced because of a change of, the case was moved to Buffalo from Rochester, I believe. Mr. Lander made a specific allegation. The district court did nothing to investigate that allegation and essentially, or in fact, relieved Mr. Lander of an attorney. Again, counsel for Mr. Lander, or prior counsel for Mr. Lander again brought the issue to the district court. There was another conference on the 16th of June, and again, counsel raised the issue of his inability to go on in the case, and the district court again said, no, denied. It's simple, I'm not going to appoint alternate counsel. So essentially, Mr. Lander did not have counsel for many- But counsel, can I just ask, the judge eventually did give him substitute counsel, right? The judge did. What happened- And this was very thoroughly litigated, right? There was an actual hearing, and there was It took a long time for the court to sort through what to do, but the end result was that Mr. Lander got an independent lawyer and was allowed to thoroughly litigate this, right? Yes, but that is not the, respectfully not the inquiry. Under United States v. Getter, the Supreme Court has said in that case that the denial of counsel overnight, during an Well, that's because something happened in the meantime, right? During that period of time, the defendant was not able to prepare for what happened the next day, and then was stuck on the stand unprepared. But here, it almost seems like the district court sort of, there was like a big hitting of the pause button, and there was nothing that the defendant was precluded from doing in the end, right? He was not left to like litigate a suppression motion on his own, get a ruling, and then have a lawyer come in and try to clean up the mess, right? But that would be if you were engaging in a prejudice analysis, Your Honor, and I would address that one second in terms of what prejudice there was. But I respectfully submit that that is not the analysis here. Under Getter, and what happened is Getter testified on direct examination, there was an overnight break, and he wasn't allowed to consult with counsel at all for months. Initially, the district court denied, you know, said, go pro se. It's simple, you do it yourself. The district court then, months later in July, after this issue was originally raised in March, in July, the district court tries to assign new counsel, agrees that new counsel must be assigned, and because of a variety of reasons, the first attorney died, next two attorneys, possible attorneys were conflicted. Mr. Lander did not get to meet with his attorney who pursued those motions on his behalf until I believe it was November 28th, so nine months after the issue was initially raised. In terms of prejudice, Judge, during all that period of time, I mean, there is a day-to-day or conversation-to-conversation interaction between attorney and client, and part of what specifically could have happened during this period of time if nine months hadn't elapsed, eight months hadn't elapsed between the initiative being raised and Mr. Lander actually having an attorney, is that maybe a new attorney could have persuaded him that filing a motion or proceeding with a motion to withdraw his plea wasn't the best route to follow in this case. Can I ask you about how your argument fits into what I would think is a relatively common fact pattern in the district courts. A defendant claims that there's a conflict of interest with his attorney, and the attorney agrees, and the district court agrees, and allows counsel to withdraw. And then he says, well, I'm going to ask the clerk's office to go to the CJA panel and find somebody new. And let's say they run into the problem similar to yours where they appoint a lawyer, the lawyer dies before even meeting the client. Things happen for a number of months. Let's say COVID intervenes, who knows? And it winds up being six months before finally all of these efforts produce a lawyer who finally meets with the client and starts filing motions. Are you saying that any delay, whether it's a day, or a month, or six months, means that there's a per se violation of the Sixth Amendment that, well, I'm not quite sure what the relief is that would then be provided. Is that what you're saying? That any delay in appointment? What's the difference here? The difference here is that Mr. Lander was told to represent himself. He wasn't told in March, or April, or May, or June that alternate counsel would be assigned to him. He was told go pro se. And the circumstance, Your Honor, is proposing the client knows from that moment forward, and that from that moment forward, they do have counsel, even if it takes a day or a week or whatever. Also, obviously, the better practice would be not to relieve trial counsel or any counsel until alternate counsel is actually assigned. But that's irrelevant to this circumstance, Your Honor. What happened here is he was told, do it yourself. And this was the beginning of the case. That leads into the second argument that I'd like to raise, which is the government's breach of the plea agreement. Mr. Lander and the government entered into a plea agreement. The government agreed that it would recommend that it would not oppose the two-point reduction for acceptance of responsibility, and that it would recommend the additional one-point reduction for acceptance of responsibility. The government initially filed that motion. And once Mr. Lander filed his motion to withdraw his plea, the government ultimately filed a motion withdrawing and asking the district court not to award the acceptance of responsibility credit. By doing that, the government breached its plea agreement with Mr. Lander. Tell me, didn't Mr. Lander breach it first, when he submitted a letter asserting his innocence to the charges? I know he withdrew it, but it seems to me you're saying the defendant was allowed to sort of call a footfall to himself, but the government was not? So when he breached it first, that we're going to just ignore? No, I'm not saying that, Judge. First of all, the assertion of innocence was never the basis for the motion to withdraw the plea. The motion to withdraw the plea was conduct that his district court credited ultimately after hearing, having an evidentiary hearing, that the statements that Mr. Lander attributed to his attorney, his attorney had said, the district court gave it a different interpretation. So the basis to withdraw the plea was never on the grounds of innocence. In a pro se submission to the court that was going to take a few days before oral argument was to take place on the motion to withdraw the plea, Mr. Lander said in his letter, I want to lay out my feelings about this. And one of my feelings about this is that in spite of the fact that I asserted my innocence, trial counsel did not give me the kind of representation I deserved, obviously, and I'm paraphrasing. And to the extent that that had anything to do with asserting innocence, it was explicitly withdrawn by trial counsel. Isn't the language of the plea agreement allow the government to modify its position? I don't know what the precise word is, but modify its position with respect to sentencing in the event that the defendant, your client, engages in conduct or make statements after the agreement and why why wouldn't the effort to withdraw the plea for whatever reason, not constitute, because there's no no further elaboration, this conduct and statements made by the defendant subsequent to this agreement. That is the language on us. Absolutely correct. And no, that didn't authorize the government to to move to withdraw its agreement to acceptance. And the reason for that is in this court's case law. This court has recognized the distinction when somebody moves to withdraw a plea on the basis of innocence, that is conduct or statement inconsistent with acceptance of responsibility. But the point, if I can leave one point with the court, it is that Mr. Lander was trying to vindicate legal rights here. He believed that his right to an attorney who didn't operate under a conflict had been infringed. He believed his Fourth and Fifth withdraw the plea. There is nothing inconsistent with trying to assert your legal rights. There's nothing inconsistent. There is something inconsistent between pleading guilty and later saying I'm innocent. And the fact is, he said that regardless of I know you say that wasn't the legal basis for him withdrawing the plea. But let's say he showed up at sentencing and said, Your would agree in that circumstance, that would be under the terms of the plea agreement, a statement by the defendant subsequent to the agreement. And that would be a statement inconsistent with the plea agreement that would allow the government to change its position. So I guess I'm not. Why is it that you say that an assertion of innocence doesn't fall innocent, but because he withdrew it or because it wasn't the legal basis for seeking to withdraw his plea. Now the government can't found there that that's not sorry. I'm saying that's kind of a gotcha analysis in one process submission to the court in not in terms of I'm saying I'm innocent of these charges and I want to withdraw my plea on that basis. But in saying in terms of my lawyer didn't represent me, didn't do a good job. I said I was innocent and he didn't adequately investigate that. That is not moving to withdraw your plea on the basis of innocence. The basis for withdrawing the plea was many. Innocence was not one of them. As a matter of fact, I have never seen and I'm sure the not only about offense conduct, but about relevant conduct and about uncharged conduct. And in fact, even in the evidentiary hearing, when the government asked Mr. Lander, did you take the photographs? He says, yes, I took the photographs. This was not a man other than one word in one letter that ever said anything in terms of the process of moving to withdraw his plea about being innocent. He admitted left and right his conduct repeatedly. In conclusion, counsel. Yeah, I'm sorry, your honor. I said in conclusion, would you? In conclusion, I will talk to you all a little more, I hope, in rebuttal. Yes, you deserve some time for rebuttal. We'll hear from the state. Good morning. May it please the court. Catherine Gregory, Assistant U.S. Attorney representing the United States. Your honors, this is a case of buyer's remorse. The district court protected the appellant's right to conflict-free counsel. The government complied with the explicit terms of the plea agreement. The sentencing proceedings were fair and accurate. You heard opposing counsel say that he was unrepresented for a crucial part of this procedure. The district judge told him to represent himself. How do you respond to that? Yes, your honor. I want to clarify, actually. So the appellant is doing a couple things here. The first is collapsing all of Mr. Lander's allegations that he made over a number of letters and a number of filings into this one first pro se letter. And if we look at that, which is at A188, there are no allegations that counsel said that he would shoot someone who did this to his son. There's no allegation of that statement. There's no allegation that he actually threatened him. If we look at the text of the first letter, which is what the district court had to go on, he says, I haven't felt right, which indicates a change of heart. He says that he was told there was no viable option at trial and that he should plead guilty, which he calls pressure. But I would respectfully submit that if I'm told it's raining, I'm not being pressured to pick up an umbrella. And he says he's never seen incriminating evidence, which is vague, but it's unclear whether, for example, he requested copies of the child pornography. So the district court, when it received this letter, it had on the one hand his sworn plea colloquy in which he had assured the court under oath that this was voluntary, it was uncoerced, that he was fully satisfied with his attorney, which this court and the Supreme Court have held carries a presumption of veracity. And on the other hand, he had this unsworn letter coming a year after the plea almost, about a year, in which there are, which appears to describe a disagreement between counsel and the client, and a not uncommon situation where he feels dissatisfied with the outcome and that he wants a new attorney. Well, it's also a lawyer impugning his own client in one sense. I mean, I think that that's part of the argument. So I believe that part of the argument is that there's an actual conflict here. Yes, Your Honor. And so our argument is that this first letter did not create a conflict because there's nothing in here that would indicate that he's operating under, he's laboring under conflicted interest. An actual conflict. So it didn't even create a potential conflict? Well, possibly. And so that's why when the district court, when they came in, the district court inquired of Mr. Covert, because you don't want to put a represented defendant out on his own in court, said, what's the problem here? And Mr. Covert indicated that the appellant refused to engage with him. He wouldn't even speak with him, if you look at the transcript. So the district court did not order him to proceed pro se. He said, you can either talk to Mr. Covert about it, or you can proceed pro se, but based on what I'm seeing, I can't imagine what the problem is. And then he allowed them time to speak. Mr. Lander, again, refused to engage with Mr. Covert. So the district court had this not uncommon, again, attorney client disagreement. And as this court has held, a blunt, honest, but negative assessment of your chances at trial, which is exactly what is described in this first level, combined with advice to enter a guilty plea, generally does not indicate coercion. Now, as soon as understand what your argument there is. So as I understand it, you're characterizing the proceeding before the district court, that's on page 221 of the appendix, not as the district court actually instructing the defendant to appear pro se, and thereby relieving Mr. Covert as counsel, but as simply saying that's, you know, if this is the direction things go, you know, in theory, you could wind up pro se. Is that what you're saying? You're not? Are you saying that he was or was not relieved at that moment? I guess that's not really it. No, he was not relieved until July, which I believe was two status hearings later. And that's he was clearly not relieved because Mr. Covert kept trying to meet with him to discuss this issue, to find out what was going on. And as I was about to say, as soon as Mr. Covert, he's told Mr. Covert, look, I want to make arguments that you've coerced me. Mr. Covert informed, I think in an affidavit, informed the court, I can no longer represent him. There is now a conflict of interest. The district court appointed a new attorney, which again is going to take time no matter what the circumstances are, because we don't have a stable of attorneys standing in the gallery. So there was never a lapse in representation here. There was not an actual conflict created by that first letter. An actual conflict has to be one that adversely affects counsel's performance. He doesn't have to show prejudice, but he does have to show that it adversely affected the performance or that it caused a lapse. And here, Mr. Covert took no substantive actions on Mr. Lander's behalf until they figured this disagreement out further. He was never able to get conflict-free counsel for his motion to withdraw using his desired arguments for the motion to reconsider, the evidentiary hearing, the oral argument, and his sentencing. So the district court did not order, and I would just refer you to the transcript rather than go through the whole thing with you, but the district court did not order him to go pro se. It said, this does not look like anything to me. Your attorney is a great attorney. You can talk to him about it or you can proceed pro se, but I'm not going to just give you a new attorney because you're asking for one. Now as to the plea agreement, as a result of all of this post-plea litigation, yes, the government moved to deny the one-level adjustment for acceptance of responsibility. But it beggars belief to say that this breached the agreement when the plea agreement explicitly reserved the government's right to change its position as to any sentencing factor that might be related to post-plea conduct. It is entirely consistent with that agreement for the government to advocate against the one-level reduction for a timely plea. That was 3E1.1B. The government did not advocate against the two-level adjustment for the lay understanding of acceptance of responsibility, which probably would have been the stronger argument. But it took, I believe, three years of post-plea litigation to actually finalize and confirm that this plea was valid. It is not your, well, maybe I should ask it in a less leading way. Is it your position, is it the government's position, that if he had complained explicitly about ineffective assistance of counsel after the agreement, that that would be a basis to argue against the acceptance points or for the government to otherwise modify its position with respect to sentencing? Well, the sentencing adjustment that we argued was 1.1B, which is timely plea. So if it took No, no, I understand that. I'm saying I don't know that it necessarily matters what the reason is as much as for that specific enhancement. Is it because that enhancement is about whether your plea saves the government time? It's not punishing you for vindicating your rights. It's saying how much time did we save with a timely plea? So whatever the reason, because before a plea we have hearings, we have various procedures. So if there were a good faith basis for an ineffective assistance of counsel claim that was expressed by the defendant after the agreement was signed, you think that the government would still be entitled to, as a constitutional matter, but also under the guidelines, to withdraw or to seek the elimination of that one point, one acceptance point for timely acceptance? I don't think that the motion to deny that adjustment would violate the terms of the plea agreement as this is written. And in this particular case, the government was not of responsibility. And I just want to point out that this court has held repeatedly that a defendant is not entitled to the acceptance of responsibility of adjustment. It can certainly be negated by a post plea disavowal of guilt, which is exactly what happened in this case. Not just because he continued to voice blame as the district court put it on everyone but himself, but he actually did assert his innocence, which as soon as he received proper counsel, he was advised, I submit, to withdraw it for strategic purposes. But in any event, whatever the outcome here, the government withdrew the motion just a few weeks later and the district court explicitly called this motion irrelevant. That's a quote. Irrelevant to its factual findings and that it had, quote, no effect whatsoever on its determination regarding the acceptance of responsibility adjustments. The district court even went beyond the government's motion and denied any adjustment pursuant to 3E1.1 for a litany of reasons that it laid out at the sentencing, including the fact that Mr. Lander lied under oath. So that's what the district court based its decision on. And it explicitly said, I don't, it has no finding, it has no effect on me whatsoever. I'm not thinking about the government's motion at all. I believe my time is expiring, so if the court has any other questions, I'd be happy to answer them. Thank you, counsel. Ms. Coughlin, you are still there. Thank you. You have three minutes for rebuttal. Thank you, your honor. I just want to address the factual issue that was raised in opposing counsel's argument. On page A188, the same document that counsel was reading from, the bottom of the third paragraph I'm reading from directly, he also stated to my father, if someone did this to my kids, I'd shoot them, which exemplifies his predisposition. So the government is just plain factually wrong. That is the March 15th letter to the court. He did, Mr. Lander did raise the issue of counsel being disinclined to represent him aggressively because of the nature of the charges. Also in terms of- Sounds like pretty just blunt advice, doesn't it? I mean, sometimes I imagine as a defense lawyer, you need to speak very, very frankly to your client and just shake them into reality. I don't see how that language is necessarily read. It could be read to suggest some sort of bias, but it could certainly, I think more honestly, more logically be read in reality check. So I guess how this is sort of some kind of silver bullet proving that- What it proves, Your Honor, is that as of March 15th, that issue was raised. The government is just wrong to say that that issue was not before the district court at the status conferences on April 8th and June 16th. In terms of Your Honor's point, you're absolutely right. The district court ultimately found that Mr. Lander's interpretation of it was incorrect. The district court credited trial counsel's testimony at the shake his client and his client's father into reality. But the district court didn't make that inquiry. The district court made no inquiry. At the very least, the district court had an obligation to inquire when that kind of specific accusation was made. And the district court ultimately finds that trial counsel did say that. This is not something that Mr. Lander made up. Lander made up. Also, just in terms of whether or not your question, Judge Nardini, whether or not counsel was actually relieved. And I'm reading directly from the status conference of April 8th, 2016, appendix 221. The court, well, comma, I guess he can go pro se. And the last, and then the district court talks about you're the best attorney I know. You're not there to make him feel good. And then at the very end, so he can appear himself, you can stand by as a standby counsel. So it is unequivocally clear, factually, that's what happened at that hearing. And when it came to the next hearing in June, the district court again denied it and said, deny, that's simple. I'd just like to briefly try to touch a little bit on the other issues, Your Honors. And the first one is, they all relate to sentencing. And I think they are all significant sentencing issues. The trial counsel, the second counsel for Mr. Lander submitted a four page sentencing memorandum that never referred to Jenkins, never referred to Dorby. These court's cases about the unusual nature of the child pornography guidelines and the need for the district court to take particular care when applying this. Trial counsel didn't say anything about it. The government was advocating for a 292-month sentence well above the guideline range that was in the plea agreement. Granted, the government had reserved the right to do that. Maximum could have been 360 months. Isn't that true? It could have been because that was the statutory maximum, Your Honor. You're absolutely right. Nobody said anything about that. And this court has repeatedly directed the district courts to consider the unusual nature of the child pornography guidelines because they are likely to generate guidelines that are inconsistent with the 3553A factors. The government relies on some sort of presumption of regularity to argue to this court that that must have happened. The district court must have done that in this case. But those cases where you relied on a presumption of regularity, it's when the parties have made the arguments. If the parties have made the arguments, you don't require the district court to explicitly address it. You're going to assume in those circumstances that the district court has considered the arguments. Nobody made those arguments in this case. I'm sorry, are you making an ineffective assistance claim? No. I'm saying that it is unclear that the district court considered the unusual nature of the guidelines in this case. The district court followed this court's admonition in Dorvey and Jenkins to do that. And we can only consider this claim if we also agree with you that the waiver is invalid, right? Exactly, your honor. And I would say, if I have any time left, under Lutschman, this waiver got Mr. Lander nothing. The government claims that because... It took years, didn't it? No, it didn't. Your honor, the guidelines were well below the 30-year statutory maximum. The guidelines included all the conduct. He pled guilty to one count of production of child pornography instead of two. And they dropped the... Dropped two charges altogether. Yes, the possession of the child pornography and the production. But the guidelines included that conduct as they had to. Victim number one was to 210-260 month guidelines. He was taking a hit for every bit of the conduct that he had committed. So dropping those additional counts was a completely illusory benefit. The judge would have had to go something like 100 months above the top end of the guideline range to get to 360. The idea that any district... Which he could have done, for example, if he determined that the defendant willfully lied to him during hearings before him, right? That would have given a basis for an upward variance that might not have been foreseeable at the time of the plea agreement, right? So he got a cap that even if he knew he was going to lie and subject himself to an upward variance, he knew that he had now an upward cap on his exposure, right? An upward cap of 360 months. That was 100 months, 100 months above the top of the guideline range. So counsel, I might agree with you on the irrationality of the child pornography sentencing guidelines, but our task is to see if the judge made an error. And you haven't persuaded me that the judge made an error in calculating the sentence. Well, the judge made an error in the guidelines in the context of child pornography guidelines is not enough. The district court has another obligation, and that is to view those guidelines with particular scrutiny because of the odd nature of how they were developed. And that was not done in this case. Thank you, counsel. Thank you both. Very nice argument. We reserve decision. Thank you.